UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| JONATHAN DUNCAN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>COMMISSIONER OF SOCIAL SECURITY, )<br>)<br>Defendant. ) | No. 1:11-cv-199<br><br>*Mattice / Lee* |

## REPORT AND RECOMMENDATION

Plaintiff Jonathan Duncan brought this action pursuant to 42 U.S.C. §§ 405(g) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying him disability insurance benefits ("DIB"). Plaintiff has moved for judgment on the pleadings and Defendant has moved for summary judgment [Docs. 13, 15]. Plaintiff alleges the Administrative Law Judge ("ALJ") failed to give controlling weight to the opinion of Plaintiff's treating physician and failed to properly assess Plaintiff's credibility. For the reasons stated below, I **RECOMMEND** that (1) Plaintiff's motion for judgment on the pleadings [Doc. 13] be **DENIED**; (2) the Commissioner's motion for summary judgment [Doc. 15] be **GRANTED**; and (3) the decision of the Commissioner be **AFFIRMED**.

I.   **ADMINISTRATIVE PROCEEDINGS**

Plaintiff initially filed his application for DIB on June 27, 2008, alleging disability as of August 2, 2007 (Administrative Record Transcript [Doc. 11] ("Tr.") 10, 41-42). Plaintiff's claim was denied initially and upon reconsideration and he requested a hearing before the ALJ (Tr. 31-40). The ALJ held a hearing on May 4, 2010, during which Plaintiff was represented by an attorney (Tr.

265-78). The ALJ issued his decision on June 10, 2010, and determined Plaintiff was not disabled because there were jobs in significant numbers in the national economy that Plaintiff could perform (Tr. 7-16). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final, appealable decision of the Commissioner (Tr. 2-4, 6). Plaintiff filed the instant action on July 23, 2011 [Doc. 2].

## II. FACTUAL BACKGROUND

### A. Education and Background

Plaintiff was 32 years old, a younger individual, at the disability onset date and was 35 at the time of the hearing and the ALJ's decision (Tr. 23, 268). Plaintiff had completed the tenth grade and later went to trucking school (Tr. 103, 268).

Plaintiff testified that his gout was a significant hindrance to work because he would have severe pain and swelling if he had to walk for eight to ten hours a day (Tr. 269-70). Plaintiff stated he had gout in both feet and it was moving into his knee; the gout caused severe pain and he tried to keep his feet elevated at all times while at home (Tr. 270). During flare ups, which typically lasted for two to three months, Plaintiff was sometimes bedridden (Tr. 271).

Plaintiff also testified to experiencing breathing problems during any activity, including walking (Tr. 272). Plaintiff would get winded after walking a short distance and it affected his ability to carry any weight (Tr. 272-73). Plaintiff experienced severe chest pains from time to time, particularly when he was more active; the pain was so severe it could turn his face numb and his ears would ring (Tr. 273). Plaintiff stated he had been more active recently because he was trying to play with his son and throw him a ball, which resulted in more chest pain (Tr. 273-74).

Finally, Plaintiff testified that he suffered from depression and mood problems (Tr. 274).

Plaintiff testified he had bad days about half the time where he could not get out of bed (Tr. 274). Plaintiff lived with his father and occasionally helped him with chores, such as feeding the animals three days a week, but would usually have to take a break (Tr. 274-75).

### B. Vocational Expert Testimony

During the hearing, the ALJ sought testimony from vocational expert J.D. Flynn ("VE"). The ALJ asked the VE to consider an individual who was 35 years old, with an eleventh grade education, and capable of light work (Tr. 276). The VE testified that an individual with those characteristics could perform jobs such as food preparation, with 2,125 jobs in the region and 116,171 nationally, counter attendant, with 2,134 jobs in the region and 154,341 nationally, and dining room attendant, with 957 jobs in the region and 74,066 nationally (Tr. 276). The ALJ next asked the VE to specify sedentary jobs the same individual could perform, and the VE testified the individual could work as a credit authorizer, with 335 jobs regionally and 16,064 nationally; a charge-account clerk, with 716 jobs in the region and 33,289 nationally, or an order clerk, with 369 jobs regionally and 19,047 nationally (Tr. 276). The VE characterized all of the stated jobs as unskilled and involving routine, simple tasks (Tr. 276). Next, counsel for Plaintiff asked the VE if any jobs would exist for an individual who had to keep his feet elevated for the majority of the day, and the VE testified that the jobs he previously listed could not be performed by an individual with such a limitation (Tr. 277).

### C. Medical Records[1]

Plaintiff reported foot pain and swelling in his right foot to Dr. David Byrd on March 7, 2002

---

[1] Plaintiff does not challenge the ALJ's determination as to his mental impairments or his physical impairments other than gout; as such, this summary will focus on records documenting Plaintiff's gout diagnosis and treatment.

3

(Tr. 127, 159). A notation of "? gout" was made in the medical record on this date (Tr. 159). Plaintiff had an x-ray of his right foot on October 8, 2004; there was no bony or soft tissue abnormality noted (Tr. 167). On October 8, 2005, Plaintiff was admitted to the hospital with pneumonia and reported some pain in his right knee and itching around his feet (Tr. 176).

Plaintiff was examined by Dr. Shane Roberts on September 9, 2008, and Dr. Roberts found that Plaintiff had full range of motion in all his extremities and joints, could occasionally lift and/or carry 25-30 pounds, could frequently lift and/or carry 20-25 pounds, could stand and/or walk for a total of four to six hours in an eight-hour workday, and could sit for a total of six to eight hours in an eight-hour workday (Tr. 128-32).

Dr. Stephen Burge completed a physical residual functional capacity ("RFC") assessment on September 25, 2008 and opined Plaintiff could occasionally lift and/or carry up to 50 pounds, frequently lift and/or carry up to 25 pounds, stand and/or walk for about six hours in an eight-hour workday, sit for about six hours in an eight-hour workday, and was unlimited in his ability to push and/or pull (Tr. 142-46). Dr. Burge noted that based on Plaintiff's consultative examination, Plaintiff did not have joint swelling or erythema and could perform medium work (Tr. 143, 146).

On February 2, 2009, Dr. Susan Warner completed a physical RFC assessment and opined Plaintiff could occasionally lift and/or carry up to 50 pounds, frequently lift and/or carry up to 25 pounds, stand and/or walk for about six hours in an eight-hour workday, sit for about six hours in an eight-hour workday, and was unlimited in his ability to push and/or pull (Tr. 149-54). Dr. Warner opined Plaintiff should only occasionally climb ramps or stairs and could never climb a ladder, rope, or scaffolds (Tr. 151). Dr. Warner also opined Plaintiff should avoid concentrated exposure to fumes and odors (Tr. 152). Dr. Warner noted that Plaintiff's gout was apparently controlled by

4

medication (Tr. 154).

On September 10, 2009, Dr. Byrd wrote on a prescription pad that "Mr. Duncan has gout and should keep his foot elevated all possible" (sic) (Tr. 259).[2] On February 17, 2010, Plaintiff saw Dr. Kristel Rush and reported that Celexa worsened his gout; he complained of aching and throbbing pain in his foot with swelling, tenderness, and tingling in his legs (Tr. 249-50). Dr. Rush noted Plaintiff's feet were swollen and his range of motion was moderately reduced in the left foot (Tr. 250). Dr. Rush prescribed Uloric for Plaintiff's gout (Tr. 250). Plaintiff saw Dr. Rush on March 10, 2010 and did not complain of gout pain (Tr. 243-44).

## III. ALJ'S FINDINGS

### A. Eligibility for Disability Benefits

The Social Security Administration determines eligibility for disability benefits by following a five-step process. 20 C.F.R. § 404.1520(a)(4)(i-v). The process provides:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment-i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities-the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant

---

[2] As will be discussed *infra*, this record was not in the evidence before the ALJ and was instead submitted only to the Appeals Council after the ALJ's decision.

is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647 (6th Cir. 2009). The claimant bears the burden to show the extent of his impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

**B.     ALJ's Application of the Sequential Evaluation Process**

At step one of this process, the ALJ found Plaintiff had not engaged in any substantial gainful activity since August 2, 2007, the alleged onset date (Tr. 12). At step two, the ALJ found Plaintiff had the following severe impairments: gout, essential hypertension, moderate airway obstruction, atelectasis, hyperglycemia and dysthymic disorder (Tr. 12). The ALJ determined these impairments were severe because they caused significant limitations in Plaintiff's ability to perform basic work activities (Tr. 12).

At step three, the ALJ found Plaintiff did not have any impairment or combination of impairments to meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Pt. 404, Subpt. P, App'x. 1 (Tr. 12). Specifically, the ALJ found that Plaintiff's impairments did not meet or medically equal Listings 3.00, 4.00, 9.00 and 12.00 and noted he considered the effects of Plaintiff's obesity (Tr. 12). The ALJ discussed at length his consideration of Listing 12.04B and 12.04C and determined Plaintiff did not meet the listings; however, the ALJ noted that his RFC assessment reflected the limitations he considered in conjunction with Listing 12.04B (Tr. 12-14). The ALJ determined Plaintiff had the RFC to perform light work which included only unskilled, routine, simple tasks (Tr. 14).

At step four, the ALJ found Plaintiff was unable to perform his past relevant work (Tr. 16).

6

At step five, the ALJ noted Plaintiff was age 32, a younger individual, as of the disability onset date (Tr. 16). After considering Plaintiff's age, education, work experience, and RFC, the ALJ found there were jobs that existed in significant numbers in the national economy which Plaintiff could perform (Tr. 16). This finding led to the ALJ's determination that Plaintiff was not under a disability as of August 2, 2007 (Tr. 17).

## IV. ANALYSIS

Plaintiff essentially asserts two arguments, both which stem from a purported limitation that Plaintiff must keep his feet elevated for most of every day. Plaintiff's first argument is that the ALJ failed to give controlling weight to the opinion of Dr. Byrd, Plaintiff's treating physician, failed to specify what weight was afforded to Dr. Byrd's opinion, and did not properly consider Dr. Byrd's opinion that Plaintiff must keep his feet elevated when at all possible. The other argument concerns the ALJ's treatment of Plaintiff's own testimony that he keeps his feet elevated for most of the day, and is essentially a challenge to the ALJ's determination of Plaintiff's credibility in the context of Dr. Byrd's similar opinion.

### A. Standard of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quoting *Walters*, 127 F.3d at 528). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Id.* (internal quotes

omitted). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decisionmakers because it presupposes there is a zone of choice within which the decisionmakers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, consider any evidence which was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sep. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claim of error without further argument or authority may be considered waived).

### B. Dr. Byrd's Opinion

Plaintiff argues the ALJ should have given Dr. Byrd's opinion controlling weight because he was Plaintiff's treating physician and further argues the ALJ did not appropriately specify what

8

weight, if any, he gave to Dr. Byrd's opinion [Doc. 14 at PageID#: 48]. Plaintiff contends the ALJ's statement that Plaintiff was never hospitalized or told to restrict his activities due to gout mischaracterizes the medical record because it shows the ALJ did not properly consider Dr. Byrd's statement that Plaintiff should keep his feet elevated when at all possible [*id.* at PageID#: 48-49]. Plaintiff argues that Dr. Byrd's recommendation to keep his feet elevated when at all possible would significantly affect Plaintiff's ability to perform work, as evidenced by the VE's testimony that no jobs would be available for an individual who needed to keep his feet elevated for the majority of the day [*id.* at PageID#: 49].

The Commissioner argues generally that the limitation that Plaintiff must keep his feet elevated the majority of the time was not supported by the record and the ALJ was not required to include that limitation in his RFC or his hypothetical question to the VE in any event [Doc. 16 at PageID#: 57]. The Commissioner summarizes the opinions of two state agency physician opinions who determined Plaintiff could perform medium work and did not specify any requirement to keep his legs elevated during the day [*id.* at PageID#: 58-59]. The Commissioner asserts that Plaintiff's gout diagnosis from his treating physicians did not establish the severity of the condition, and that Plaintiff's physicians had treated it conservatively noting that Plaintiff took over-the-counter medications and was never hospitalized [*id.* at PageID#: 59]. The Commissioner points out that Plaintiff rarely complained of gout symptoms after the diagnosis and, on the occasion he did complain of pain, he was prescribed medication, but was not limited as to any work-related activities [*id.* at PageID#: 59-60]. Because none of Plaintiff's treating physicians had imposed work-related restrictions, the Commissioner contends the ALJ's decision was proper [*id.* at PageID#: 60].

The Commissioner also asserts the opinion by Dr. Byrd submitted to the Appeals Council

9

after the ALJ's decision cannot be used for the purposes of substantial evidence review and can only be used to obtain remand under sentence six of 42 U.S.C. § 405(g) [*id.* at PageID#: 61]. To that end, the Commissioner argues that Plaintiff failed to show that Dr. Byrd's opinion is new or material or that good cause existed for not submitting it to the ALJ. Specifically, the Commissioner notes the opinion was dated nine months before the ALJ's decision and did not specify that Plaintiff could not work because he had to elevate his legs all day, but merely said he should elevate his legs when at all possible [*id.* at PageID#: 61-62].

Generally, a treating physician's opinion is entitled to complete deference if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)) (alteration in original). Even if the ALJ determines that the treating source's opinion is not entitled to controlling weight, the opinion is still entitled to substantial deference commensurate with "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." 20 C.F.R. § 404.1527(d)(2); SSR 96-2p; *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 192 (6th Cir. 2009). The ALJ is not required to explain how he considered each of these factors, but must nonetheless give "good reasons" for rejecting or discounting a treating physician's opinion. *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011). These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson v. Comm'r of Soc.*

*Sec.*, 378 F.3d 541, 545 (6th Cir. 2004) (quoting SSR 96-2p). Failure to give good reasons requires remand, even if the ALJ's decision is otherwise supported by substantial evidence, unless the error is de minimis. *Id.* at 544, 547.

The Commissioner argues, however, that the treating physician opinion analysis cannot apply because Dr. Byrd's short statement about Plaintiff's need to elevate his legs was only submitted to the Appeals Council after the ALJ's decision, obviating the ALJ's obligation to undertake an analysis of Dr. Byrd's opinion. Although it was not immediately clear from the record that this was the case, after a careful review of the exhibits submitted to the ALJ, I **FIND** Dr. Byrd's opinion was not before the ALJ at the time of his decision, rendering Plaintiff's argument about the ALJ's failure to address the opinion irrelevant.[3] As such, the required analysis of Dr. Byrd's opinion shifts

---

[3] The Commissioner cites to pages 17 and 256-64 in support of this contention. Page 17 is the last page of the ALJ's decision, which shows the date of June 10, 2010, and pages 256-64 begin with Plaintiff's brief to the Appeals Council, dated June 25, 2010, and are followed by various records from Good Faith Clinic, including Dr. Byrd's opinion. The brief states that treatment notes from Good Faith Clinic from 3/7/02 to 1/14/10 are attached (Tr. 258). Treatment notes from this exact same time frame were purportedly attached to an earlier submission of documents by letter dated April 15, 2010, which was prior to the hearing and the ALJ's decision (Tr. 230). This exhibit, 10F, is the one referenced by the ALJ in his discussion of records from Good Faith Clinic (Tr. 14-15). It does not appear, however, that Dr. Byrd's opinion was among the nine pages of records included in exhibit 10F.

Interestingly, many of the same records from Good Faith Clinic are included in exhibit 7F, submitted to the Commissioner on December 31, 2009 (Tr. 155). The notation on this letter regarding enclosures originally read "Treatment Notes and Test Results from Dr. David Byrd, Athens Family Practice dated 3/7/02 to 9/10/09" but was modified to read "Treatment Notes and Test Results from ~~Dr. David Byrd~~, Athens Family Practice dated ~~3/7/02 to 9/10/09~~" and the date 11/8/09 was added (Tr. 155). Perhaps Dr. Byrd's statement from 9/10/09 was originally intended to be attached to this letter, but for whatever reason, it was not.

In addition, as further support for the Commissioner's contention that the ALJ did not have Dr. Byrd's opinion at the time of his decision, the hearing brief submitted to the ALJ on May 4, 2010 makes no mention of or argument concerning Dr. Byrd's opinion (Tr. 118-22).

11

considerably because the Court cannot consider evidence submitted to the Appeals Council after the ALJ's decision for purposes of substantial evidence review if the Appeals Council declines to review the claim. *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). The Court can only remand the case for further proceedings pursuant to sentence six of 42 U.S.C. § 405(g) if the evidence is new and material and there was good cause for not presenting it earlier. *Id.* The evidence is material "only if there is a 'reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence.'" *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010) (quoting *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001)); *see also Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007) ("Material evidence is evidence that would likely change the Commissioner's decision").

In this case, I **FIND** the evidence is not new because the opinion was made months before the hearing and the ALJ's decision, and there is no explanation as to why Plaintiff did not submit the opinion to the ALJ prior to his decision. In addition, I **FIND** the evidence is not material because it is not specific enough to create a reasonable probability that the outcome of Plaintiff's claim would differ on remand. The opinion merely states that Plaintiff should keep his foot elevated when "all possible" (sic) but this does not, alone, indicate any significant, daily limitations that would prevent Plaintiff from all work, particularly in the context of the other evidence in the medical record, i.e., the lack of any opinion by a treating physician that Plaintiff was disabled and could not work, the lack of any work-related restrictions imposed by other physicians, Plaintiff's sporadic reports of gout pain, and the otherwise conservative treatment of this condition. I **CONCLUDE** Plaintiff has not established Dr. Byrd's opinion is new and material such that a sentence six remand would be appropriate.

### C. ALJ's Credibility Determination

Plaintiff testified during the hearing that he keeps his feet elevated all day and, although the ALJ acknowledged this testimony, Plaintiff argues that the ALJ took other testimony out of context to diminish the credibility of this statement [Doc. 14 at PageID#: 49]. Plaintiff argues that although he did testify that he helps his father feed the animals, it is only on days that he is not having a flare up, he has to take breaks in the middle of such activities, and he is very rarely able to play with his son [*id.*].

The Commissioner argues the ALJ reasonably found that Plaintiff's testimony regarding the intensity, persistence, and limiting effects of gout were not entirely credible. Specifically, the Commissioner notes the ALJ considered this testimony, but found that Plaintiff's conservative treatment cast doubt on the severity of his complaints [Doc. 16 at PageID#: 63]. Furthermore, the Commissioner argues the ALJ reasonably found that Plaintiff's stated daily activities were not consistent with his subjective symptoms, as Plaintiff sometimes plays with his son and helps feed and care for his father's animals three days a week [*id.* at PageID#: 63-64].

An ALJ must consider "the claimant's allegations of his symptoms. . . with due consideration to credibility, motivation, and medical evidence of impairment." *Atterberry v. Sec'y of Health & Human Servs.*, 871 F.2d 567, 571 (6th Cir. 1989). Credibility assessments are properly entrusted to the ALJ, not to the reviewing court, because the ALJ has the opportunity to observe the claimant's demeanor during the hearing. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). Where an ALJ's credibility assessment is fully explained and not at odds with uncontradicted evidence in the record, it is

13

entitled to great weight. *See King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984) (noting the rule that an ALJ's credibility assessment is entitled to "great weight," but "declin[ing] to give substantial deference to the ALJ's unexplained credibility finding," and holding it was error to reject uncontradicted medical evidence). *See also White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009) (ALJ was entitled to "rely on her own reasonable assessment of the record over the claimant's personal testimony"); *Barker v. Shalala*, 40 F.3d 789, 795 (6th Cir. 1994) (ALJ's credibility assessment is entitled to substantial deference).

The ALJ cannot base his credibility finding on intuition, but must give "specific reasons for the finding on credibility, supported by the evidence in the case record," and the reasons must be "sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the [ALJ] gave to the [claimant's] statements and the reasons for that weight." Social Security Ruling ("SSR") 96-7p (1996); *Rogers*, 486 F.3d at 247-48. "Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect." *Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 863 (6th Cir. 2011).

According to applicable regulations, the ALJ must consider a claimant's credibility in light of all the evidence in the record, including the claimant's own statements regarding the nature and severity of her symptoms, her daily activities, her prior work record, her physicians' medical diagnoses, prognoses, and opinions, her medications and other treatments, and any other relevant factors. SSR 96-7p. The ALJ must consider these factors, but he is not required to devote written attention to each piece of evidence he considers. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006). Instead, the applicable regulations provide that the ALJ must state

14

the reasons for his assessment of the claimant's credibility, and those reasons must themselves be grounded in the record. SSR 96-7p.

With respect to credibility, he ALJ found:

> The claimant testified the gout he suffers in both feet recently spread to his knees. He stated he essentially keeps his feet elevated all day upon waking in the morning and experiences flare-ups every few months that leave him bed-ridden for weeks at a time. Medical records from the Good Faith Clinic show the claimant was diagnosed with gout in 2002; however, his physicians have treated this condition with Naproxin, Ibuprofen and diuretics. It is also noted that since that diagnosis, none of the claimant's physicians have hospitalized him or made any recommendations he curb or restrict any of his daily activities due to gout-related complications (Exhibit 10F).
> . . .
> While I do not doubt the claimant experiences some pain and difficulty as a result of these various ailments, I find his testimony to have only limited probative value as to this decision. The claimant asserted his gout requires him to keep his feet elevated all day and prevents him from performing any household chores. Yet, he also testified he helps feed and care for his father's animals three days a week. Additionally, he testified he has begun visitation with his young son and even sometimes plays with the boy.

(Tr. 14-15).

Plaintiff argues the ALJ took his statements out of context, but the ALJ's representation of Plaintiff's testimony is a fair characterization of what he stated. Plaintiff did testify to having flare-ups that would leave him bedridden for months at a time, but the ALJ found this statement lacked credibility when compared to the conservative treatment of his gout and the lack of restrictions on activities imposed by his physicians. The ALJ also accurately characterized Plaintiff's testimony as to his activities, as Plaintiff testified he would sometimes throw a ball to his son during visits and fed his father's animals three days a week (Tr. 273-75). Finally, Plaintiff's argument with respect to his testimony about needing to take breaks during activities is not entirely relevant to Plaintiff's

15

limitations due to gout because he was responding to a question about multiple ailments, such as Plaintiff's chest pain and breathing problems, in addition to gout (Tr. 274-75).

I **FIND** the ALJ accurately characterized Plaintiff's hearing testimony and considered Plaintiff's testimony that he needed to elevate his feet all day in the context of his diagnosis, medications, and daily activities, which satisfies the ALJ's obligation to consider the factors listed above. In addition, although the ALJ gave controlling weight to the findings, diagnoses and observations of Plaintiff's treating physicians (and little weight to the state agency physicians who opined Plaintiff could perform medium work, thereby giving some credence to Plaintiff's subjective complaints), there were no opinions by Plaintiff's treating physicians imposing significant work-related restrictions or affirming the severity of symptoms alleged by Plaintiff. Because of the inconsistencies between Plaintiff's reported severity of his symptoms, the conservative treatment for his gout, the lack of any physician-imposed restrictions on activities, the absence of any hospitalizations for severe symptoms, and Plaintiff's reported daily activities, the ALJ reasonably concluded Plaintiff's testimony was not entirely credible.

Accordingly, I **FIND** the ALJ properly assessed Plaintiff's credibility in light of all the evidence in the record and, after considering all of Plaintiff's arguments, I **CONCLUDE** the decision of the ALJ was supported by substantial evidence.

## V. CONCLUSION

Having carefully reviewed the administrative record and the parties' arguments, I

**RECOMMEND** that:[4]

    (1)    Plaintiff's motion for judgment on the pleadings [Doc. 13] be **DENIED**.

    (2)    The Commissioner's motion for summary judgment [Doc. 15] be **GRANTED**.

    (3)    The Commissioner's decision denying benefits be **AFFIRMED**.

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

---

[4] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).

17

Case 1:11-cv-00199-HSM-SKL Document 17 Filed 02/15/12 Page 17 of 17 PageID #: 82